IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BOBBY D. CHAPEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-12-004-KEW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Bobby D. Chapen (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 30, 1986 and was 24 years old at the time of the ALJ's decision. Claimant completed his high school education, although he was enrolled in special education classes for English and Math. Claimant worked in the past as a maintenance

man, retail worker, and as a cart pusher. Claimant alleges an inability to work beginning January 5, 2009 due to limitations resulting from depression, anxiety, ankle pain, cerebral palsy, severe learning disability, and history of seizures.

## Procedural History

On January 8, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On June 17, 2009, an administrative hearing was held before ALJ Trace Baldwin in Poteau, Oklahoma. On August 31, 2010, the ALJ issued an unfavorable decision. On November 10, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform his past relevant work as a janitor and cart pusher.

4

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to consider all of Claimant's severe impairments; (2) failing to properly assess Claimant's credibility; (3) reaching an improper RFC determination; and (4) finding Claimant could return to his past relevant work.

## Claimant's Severe Impairments

In his decision, the ALJ found Claimant suffered from the severe impairments of borderline intellectual functioning, cerebral palsy with seizure disorder, depression, and hydrocephalic with shunt. (Tr. 16). He determined Claimant retained the RFC to perform a full range of work at all exertional levels except that Claimant must avoid concentrated exposure to heights, machinery, and "dangerous living equipment." Claimant could understand, remember, and carry out only simple, one and two step instructions, could interact with others on a superficial level, but not with the general public, and could adapt to a work environment. Due to fall risks, Claimant was found to not be able to work on uneven or unstable surfaces and must not drive automobiles or other moving equipment while in the performance of job duties. (Tr. 23). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform his past relevant work as a janitor and

cart pusher. (Tr. 26). As a result, the ALJ concluded Claimant was not disabled. (Tr. 27).

Claimant first contends the ALJ should have found he suffered from the additional severe impairment of a personality disorder. On April 21, 2009, Claimant underwent a psychological evaluation by Dr. Robert L. Spray, Jr. Dr. Spray found Claimant was never married and had not children. He lives with his mother and fiancé. He stated he had really bad hygiene. He drives and has a license. He watches television and plays Xbox. He takes medication for depression and is pretty happy-go-lucky while on the medication but irritable without it. Claimant has no hallucinations or evidence of manic episodes. He has to be reminded to take his medications and has to have someone come with him to his appointments or he will get lost. His mother stated that if you give him something to do, he only partially completes it. (Tr. 284-85).

Dr. Spray found Claimant attained a Verbal IQ of 84, Performance IQ of 73, and Full Scale IQ of 77. Dr. Spray concluded Claimant was functioning in the borderline range of intelligence with somewhat better verbal than perceptual reasoning skills. Dr. Spray diagnosed Claimant with Depression, NOS, Borderline Intellectual Functioning, and Passive Dependent Personality Disorder. (Tr. 286).

On June 9, 2009, a Psychiatric Review Technique was completed

on Claimant by Dr. Sharon Taber. Dr. Taber found Claimant suffered from Depression, NOS, Borderline Intellectual Functioning, and a Personality Disorder where Claimant showed pathological dependence, passivity, or aggressivity. (Tr. 303-10). As a result of these conditions, Dr. Taber determined Claimant was moderately limited in the areas of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. (Tr. 313).

On June 17, 2010, Dr. Terry Hoyt, one of Claimant's treating physicians, completed a Mental Functional Assessment Questionnaire on Claimant. The form offers little information on functional limitations but does indicate Dr. Hoyt diagnosed Claimant with anxiety/depression. He also states Claimant "has inappropriate response to managing stressors." (Tr. 329).

On June 16, 2010, Dr. Hoyt also completed a Mental Medical Source Statement indicating numerous areas of functional limitations. He does not specifically conclude Claimant suffers from a personality disorder. (Tr. 332-35).

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical,

7

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his

8

> physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

While Claimant has been diagnosed with a personality disorder, he has not demonstrated that the condition poses a marked limitation in his ability to engage in basic work activity. As a result, this Court does not find the failure to include the condition at step two to be erroneous.

### Credibility Determination

Claimant next asserts the ALJ did not properly assess the credibility of Claimant's mother's testimony. Claimant cites to the case of <u>Brown v. Callahan</u>, 120 F.3d 1133 (10th Cir. 1997) in support of the requirement that the ALJ evaluate the testimony of his mother on its own merits. However, <u>Brown</u> involved a minor who is unable to adequately describe his own condition and must rely upon a parent to do so. <u>Id</u>. at 1135. Claimant is not a minor and

a separate credibility determination on his mother's testimony is not legally required.

### RFC Determination

Claimant contends the ALJ's RFC assessment was faulty. Claimant argues the ALJ should have developed the record by directing all consultative examiners to submit medical source statements. Claimant's argument lacks specific references to which physicians lacked such source statements that he contends should have authored one. Nothing in the law requires the ALJ to direct consultative examiners to complete a specific document.

Claimant also suggests that the report by Dr. Wendell Long should have forced the ALJ to send Claimant for another consultative examination. Dr. Long found Claimant's gait, speed, stability, and safety appeared to be good. He was able to walk in circles with good speed and no instability. (Tr. 293). Claimant told Dr. Long that he was flatfooted and cannot stand for periods of time because of pain. (Tr. 292). However, Dr. Long stated that "[f]latfooted and pain in the feet could not really be tested as well." (Tr. 294).

Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir.

10

2004) citing <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."  <u>Id</u>. quoting <u>Henrie v. United States Dep't of Health & Human Services</u>, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."  <u>Id</u>. quoting <u>Carter v. Chater</u>, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel.  <u>Baca v. Dept. of Health & Human Services</u>, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. <u>Henrie</u>, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .

(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

Claimant's foot problems were also noted in x-rays from June 6, 2008. The testing showed no fracture or dislocation in the ankle and no soft tissue swelling. It did indicate, however, pes planus deformity and prominence to the talar beak. (Tr. 280). The ALJ found that the condition had resolved with conservative treatment. (Tr. 17). The medical records indicate that Claimant was treated with physical therapy and Naproxen and released for a return to work. (Tr. 270). Nothing in any of these medical treatment records would require additional consultative examination or testing of this condition. The ALJ performed his duty of setting forth the medical treatment Claimant received and assessing that information in his RFC determination.

Claimant also contends the ALJ did not adequately account for

12

the effect of his seizure disorder in his RFC findings. Claimant then engages in his own analysis as to the obvious effects his seizures would have upon his ability to work without citing to any records which would support such debilitating effects. The sole citation to the record is an observed seizure by medical professionals from February 20, 2008. (Tr. 265). After approximately 5 minutes, Claimant opened his eyes and could communicate but was confused. Id. The ALJ recognized that Claimant had been seizure free for 15 years prior to this episode. (Tr. 18). The neurologist determined that the seizure threshold for his condition arising from his cerebral palsy was lessened due to Claimant's ingestion of alcohol. Id. Claimant was advised to stay on his medication and be compliant. Id. The ALJ adequately accounted for this condition in his RFC through restrictions in the areas where Claimant may work. The ALJ imposed such limitations based upon the medical record rather than the supposition that the condition causes more restrictions than medically supported which Claimant urges. No error is found in the ALJ's assessment of Claimant's seizure condition.

Claimant also asserts the ALJ failed to properly assess the opinions of his treating physician, Dr. Hoyt. Dr. Hoyt found in his Mental Medical Source Statement of June 16, 2010 - prepared as

13

the ALJ found on the eve of the administrative hearing - significant limitations. He determined Claimant was markedly limited in five functional areas and severely limited in an additional nine areas. (Tr. 332-34). The ALJ's conclusions in rejecting Dr. Hoyt's opinions are somewhat disturbing. In his decision, the ALJ stated

> I find that Health care professionals appear to have accepted, at face value, the claimant's abundant subjective history and have carried such self-assessments forward as diagnoses; however, I find that I must rely more on the objective medical evidence when assessing the extent of his actual limitations and restrictions. Further, I take administrative notice that the forms were completed/prepared on the eve of the hearing and appear to have been prepared for submission at the hearing. It would appear D. Hoyt completed/prepared the forms for purposes other than to assist him as he diagnosed the underlying impairments, assessed their severity, and otherwise provided ongoing medical care to the claimant because I find medical opinions that are prepared for genuine treatment purposes more probative than those prepared solely for submission at the hearing.
>
> (Tr. 21).

The ALJ does not dispute Dr. Hoyt's status as a treating physician. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both:

14

(1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be

"sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ did not rationalize the rejection of Dr. Hoyt's opinions based upon an analysis of the Watkins factors. Rather, he concluded without objective support that the report was tailored for Claimant to attempt to obtain benefits. On remand, the ALJ shall refer to the other objective medical evidence in the record and an evaluation of the Watkins factors in rejecting or accepting Dr. Hoyt's opinions on limitation.

### Step Four Analysis

Claimant contends that ALJ failed to properly analyze the functional requirements of his past relevant work before finding he could return to that work step four. In analyzing Claimant's ability to engage in his past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). This Court has discussed the ALJ's findings on Claimant's RFC and found it may be deficient depending upon the proper

16

assessment of Dr. Hoyt's opinions.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ in this case inquired of the vocational expert as to the demands of Claimant's past relevant work. (Tr. 47). The expert testified the janitor required medium work, low end of semi-skilled, level 3 while the cart pusher would "typically" be light, unskilled, level 2, although he admitted the job was not in the *Dictionary of Occupational Titles*. Id. In this regard, the ALJ fulfilled his duty in the second phase.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. The ALJ's RFC may be erroneous so his analysis in the third phase will have to be reassessed on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the

Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 22nd day of March, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE